# Constitutionality of Statute Governing Appointment of United States Trade Representative

19 U.S.C. § 2171(b)(3), which prohibits the appointment as United States Trade Representative of any person who has "represented, aided, or advised a foreign entity" in a trade negotiation or dispute with the United States, is an unconstitutional intrusion on the President's appointment power and thus has no legal effect.

July 1, 1996

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion whether 19 U.S.C. § 2171(b)(3) would bar the appointment of Ambassador (and Acting United States Trade Representative) Charlene Barshefsky to be United States Trade Representative. The provision, recently enacted as part of the Lobbying Disclosure Act of 1995, Pub. L. No. 104–65, § 21, 109 Stat. 691, 705, states that anyone "who has directly represented, aided, or advised a foreign entity (as defined by section 207(f)(3) of Title 18) in any trade negotiation, or trade dispute, with the United States may not be appointed as United States Trade Representative." We believe that the provision is an unconstitutional intrusion on the President's power of appointment, U.S. Const. art. II, § 2, cls. 2 & 3, and thus has no legal effect. *

Section 2171(b)(3) purports to disqualify for appointment as United States Trade Representative a broad group of the most knowledgeable and experienced practitioners in the field of international trade. When Congress was considering this restriction, the Department of Justice stated that the provision "would raise serious constitutional concerns." Letter for Hon. Henry Hyde, Chairman, Committee on the Judiciary, U.S. House of Representatives, from Andrew Fois, Assistant Attorney General, Office of Legislative Affairs at 2 (Nov. 7, 1995). In signing the bill, President Clinton stated that "Congress may not, of course, impose broad restrictions on the President's constitutional prerogative to nominate persons of his choosing to the highest executive branch positions, and this is especially so in the area of foreign relations." Statement by President William J. Clinton Upon Signing S. 1060, 2 Pub. Papers of William J. Clinton 1907 (Dec. 19, 1995). He endorsed, however, the policy behind the provision: "[B]ecause as a policy matter I agree with the goal of ensuring the undivided loyalty of our representatives in trade negotiations, I intend, as a matter of practice, to act in accordance with this provision." *Id.*

Under the Appointments Clause of the Constitution, the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, . . . and all other Officers of the United States," except for inferior officers whose appointment Congress vests in

---

* Editor's Note: A portion of this opinion addressing a separate issue is not being published.

279

the President alone, the heads of departments, or the courts of law. U.S. Const. art. II, § 2, cl. 2. Thus, under the Appointments Clause, "[t]he President has the sole responsibility for nominating [principal officers] and the Senate has the sole responsibility of consenting to the President's choice." *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 487 (1989) (Kennedy, J., concurring in the result). Whatever the possible role of Congress in setting reasonable qualifications for office, *see Myers v. United States*, 272 U.S. 52, 128–29 (1926), a restriction ruling out a large portion of those persons best qualified by experience and knowledge to fill a particular office invades the constitutional power of the President and Senate to install the principal officers of the United States. Any power in the Congress to set qualifications "is limited by the necessity of leaving scope for the judgment and will of the person or body in whom the Constitution vests the power of appointment." *Civil Service Commission*, 13 Op. Att'y Gen. 516, 520–21 (1871). Congress may not dictate qualifications "unattainable by a sufficient number to afford ample room for choice." *Id.* at 525.

Even if "[t]here is no settled constitutional rule that determines how . . . the power of the Congress to prescribe qualifications and the power of the President to appoint . . . are to be reconciled," we have opined that "there must be some constitutionally prescribed balance" and that this "balance may shift depending on the nature of the office in question." *Judges—Appointment—Age Factor*, 3 Op. O.L.C. 388, 389 (1979). Here, the restriction is particularly egregious because the office in question involves representation of the United States to foreign governments — an area constitutionally committed to the President. *See, e.g., Department of Navy v. Egan*, 484 U.S. 518, 529 (1988) (the Supreme Court has "recognized 'the generally accepted view that foreign policy was the province and responsibility of the Executive'") (quoting *Haig v. Agee*, 453 U.S. 280, 293–94 (1981)); *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 705–06 n.18 (1976) ("[T]he conduct of [foreign policy] is committed primarily to the Executive Branch."); *United States v. Louisiana*, 363 U.S. 1, 35 (1960) (the President is "the constitutional representative of the United States in its dealings with foreign nations"). *See also Ward v. Skinner*, 943 F.2d 157, 160 (1st Cir. 1991) (Breyer, J.) ("[T]he Constitution makes the Executive Branch . . . primarily responsible" for the exercise of "the foreign affairs power."), *cert. denied*, 503 U.S. 959 (1992); *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 210 (D.C. Cir. 1985) (Scalia, J.) ("[B]road leeway" is "traditionally accorded the Executive in matters of foreign affairs.").

Furthermore, the position in question is especially close to the President. The Office of United States Trade Representative is "established within the Executive Office of the President." 19 U.S.C. § 2171(a). Congress has also expressed its sense that the United States Trade Representative "be the senior representative on any body that the President may establish for the purpose of providing to the President advice on overall economic policies in which international trade matters

predominate." *Id.* § 2171(c)(2)(A). We believe that, where an office thus entails broad responsibility for advising the President and for making policy, the President must have expansive authority to choose his aides. *See also Promotion of Marine Officer*, 41 Op. Att'y Gen. 291, 292 (1956).

We therefore believe that § 2171(b)(3) is unconstitutional and cannot preclude the President's appointment of Ms. Barshefsky.

CHRISTOPHER SCHROEDER
*Acting Assistant Attorney General*
*Office of Legal Counsel*